UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 12-B-81564 |
| | ) | |
| PERRY MOY, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

McHenry Savings Bank seeks relief from both the automatic stay and the co-debtor stay to proceed with its pending foreclosure proceeding with respect to real property commonly known as 8220 Crystal Springs Road, Woodstock, Illinois 60098 (the "Crystal Springs Property"). For the reasons stated below, the motions for relief from stay and relief from the co-debtor stay will be granted.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## FINDINGS OF FACT

The Debtor, Perry Moy, filed for protection under Chapter 13 of the Bankruptcy Code on April 20, 2012. He filed an initial proposed Chapter 13 plan on June 22, 2012, and amended plans on July 20, 2012, November 29, 2012, February 19, 2013, April 30, 2013, and December 2, 2013. The Debtor's proposed plan has not yet been confirmed, in part because there is a pending and unresolved dispute over whether certain of Perry's obligations to his ex-wife, Miriam Moy, under their marital settlement agreement constitute "domestic support obligations"

as defined in the Bankruptcy Code.

The state court entered a judgment for dissolution of marriage on March 14, 2008, incorporating the terms of a marital settlement agreement (the "MSA") between Perry and Miriam. The marital settlement agreement provides that Miriam is to have possession of the Crystal Springs Property but that it was to be placed for sale.[1] Upon sale Miriam is to receive the first $400,000 in proceeds after payment of certain costs, expenses and debts. Any excess proceeds above $400,000 are to be split on a 50/50 basis between Perry and Miriam.[2] On or about the date of the dissolution of marriage Perry signed a quitclaim deed for the Crystal Springs Property in favor of Miriam, which was duly recorded on March 17, 2008.

The Crystal Springs Property is encumbered by a mortgage recorded April 12, 2004, signed by both Perry and Miriam in favor of McHenry Savings Bank (the "Bank"). The mortgage secures a promissory note in an original amount of $442,000 signed by both Perry and Miriam in favor of the Bank. The note calls for interest at an annual rate of 6.75% and monthly payments of $3,360.81. Pursuant to the terms of the MSA, Perry is responsible for "past and present liability for mortgage, any special assessments, insurance premiums, property taxes and any and all other expenses incidental to or related to [the Crystal Springs Property] until the date of sale." Perry is also obligated under the marital settlement agreement to pay Miriam $3,000 per month until the Crystal Springs Property is sold, and then $6,000 per month thereafter.

The Bank filed a foreclosure complaint in McHenry County on November, 17, 2009, seeking to foreclose on its mortgage of the Crystal Springs Property. Perry, Miriam, and several potential lien-holders were named as defendants in the foreclosure action. Apparently Miriam

---

[1] The Crystal Springs Property consists of both a residence and an adjacent lot. Under the terms of the MSA, the empty lot was to be placed for sale immediately, and the residence after being "brought into salable condition."
[2] If the net proceeds after payment of the enumerated costs and expenses are less than $100,000, Perry is obligated under the MSA to pay Miriam the difference between $100,000 and the net proceeds.

raised a number of defenses and counterclaims, and the foreclosure action remained pending through 2012 when Perry filed his bankruptcy petition. McHenry Savings Bank filed a proof of claim in Perry's bankruptcy case with respect to the Crystal Springs Property on August 15, 2012 for $608,588.67. The initial proof of claim asserted that $450,000 of this debt was secured. However, the Chapter 13 Trustee objected on the ground that the Debtor had surrendered any interest he had in the Crystal Springs Property, and the Bank subsequently amended its proof of claim to show the full amount as unsecured.

Certain other creditors commenced an involuntary Chapter 7 case against Miriam on May 16, 2012, and an order for relief was entered on August 20, 2012. Miriam was granted a Chapter 7 discharge on March 12, 2013, and the Chapter 7 trustee filed a no-asset report in her case on May 28, 2014. Miriam's case was closed on May 29, 2014.

Once Miriam received a discharge and her case was closed, her interest in the Crystal Springs Property, which was duly listed in her bankruptcy schedules, was deemed abandoned by the Chapter 7 trustee pursuant to Section 554(c). Accordingly, pursuant to Section 362(c)(1) the automatic stay imposed in her bankruptcy case lifted with respect to that property.

None of the plans or amended plans filed in Perry's Chapter 13 case provide for payment in full of McHenry Savings Bank's claim related to the Crystal Springs Property. Perry's initial plan did not expressly mention the Crystal Springs Property. However, all of his amended plans contained a statement that Perry "is surrendering his interest in the property," further stating that the property is occupied by his ex-wife, listed for sale and part of a foreclosure proceeding. Although his proposed plan as amended provides for a $2,700 per month current mortgage payment to McHenry Savings Bank outside the plan, that appears to concern a separate mortgage debt on his residence in Woodstock, Illinois. This mortgage on his home was the only secured

claim he listed in his schedule D to the petition. The debt with respect to the Crystal Springs Property was instead listed in schedule F as an unsecured debt.

Perry's current Chapter 13 plan provides for only a 16% distribution to general unsecured creditors, and estimates that McHenry Savings Bank will have a deficiency claim of $183,588.67 after foreclosure on the Crystal Springs Property. All of the proposed plans have provided for direct monthly payments to Miriam under the divorce decree and a related contingent claim of as much as $100,000 depending on the disposition of the Crystal Springs Property. His most recent plan clarifies that the monthly payments to Miriam are $3,000 per month but will increase to $6,000 per month after the sale of the property.

Perry testified at trial that he has not made any mortgage payments on the Crystal Springs Property debt to McHenry Savings Bank since 2009. Nor has he paid any property taxes on the property since then. The parties stipulated that Miriam has not made any payments on the note since 2009, either. The parties stipulated for purposes of the stay lift motion that the value of the residence portion of the Crystal Springs Property is $430,000 and that the value of the empty lot portion is $80,000. There is no objection to McHenry Savings Bank's proof of claim for $608,588.67. The parties expressly stipulated that Perry has no equity in the Crystal Springs Property.

McHenry Savings Bank has filed its motion in Perry's case for relief from the automatic stay pursuant to Section 362(d) and a motion for relief from the co-debtor stay pursuant to Section 1301(c). Neither Perry nor the Chapter 13 Trustee objects to the Bank's motions for relief. However, Miriam objects to both, asserting standing as both a creditor in Perry's case and as a co-debtor on the obligation to the Bank.[3] The court received certain stipulations and

---

[3] McHenry Savings Bank argues that because Miriam did not file a timely proof of claim in Perry's case, she lacks standing to object to the Bank's motions. However, because the court finds that Miriam failed to support her

exhibits and held a trial on the motions at which Perry, Miriam, the Chapter 13 Trustee and a representative of McHenry Savings Bank testified.

### DISCUSSION

I. Section 362(d)

Section 362(d) provides that the court shall grant relief from the automatic stay:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
    (A) the debtor does not have an equity in such property; and
    (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Section 362(g) divides the burden of proof for motions for relief from the stay such that "(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

The Bank has clearly met its burden of demonstrating the Debtor's lack of equity in the Crystal Springs Property. The parties have stipulated that the Debtor has no equity in the property. Further, it is undisputed that Perry quitclaimed his interest in the property to Miriam several years before filing his petition. Even if the MSA gave him some form of indirect and contingent financial interest in the property in the event that a sale would net proceeds of over $400,000, the stipulated values show that the property is not sufficient even to pay off the mortgage to McHenry Savings Bank.

Miriam, the party opposing the motion for relief, has failed to meet her burden of demonstrating that the Crystal Springs Property is necessary for Perry's effective reorganization.

---

objections, and therefore overrules the objections on the merits, it need not determine whether she has proper standing to object.

Perry's proposed Chapter 13 plan does not rely on the Crystal Springs Property as a source of funds for any plan payments, nor is it necessary as his residence. Instead, the plan expressly provides for surrender of the Crystal Springs Property. The property is a residence occupied not by Perry, but by his ex-wife who does not pay him rent. Therefore, the property does not generate any income to be used towards his plan. Further, the plan does not rely on any proceeds from the sale of the Crystal Springs Property. To the contrary, both the proposed plan and the stipulated facts recognize that the Crystal Springs Property is not worth enough to pay off the secured debt encumbering it.

It is true that courts have not limited the term property "necessary to an effective reorganization" to that which directly generates income in Chapter 13 or individual Chapter 11 cases. In doing so, for example, they have recognized that individual debtors generally must have a place to live in order to earn income that funds a plan. *See, e.g., In re Boomgarden*, 780 F.2d 657, 664 (7th Cir. 1985) ("One of the primary reasons for filing a Chapter 13 petition is to preserve a residence from foreclosure."); *In re Herrin*, 325 B.R. 774, 777 (Bankr. N.D. Ind. 2005) ("a debtor's principal residence which the debtor's Chapter 13 plan proposes to retain is *always* necessary for the debtor's reorganization."). But the Crystal Springs Property is *not* Perry's principal residence. He lives in Woodstock. Therefore, because the plan provides for surrender of the Crystal Springs Property, because Perry does not own the property and because the property does not and will not generate any income to fund his plan of reorganization, the Crystal Springs Property is clearly not necessary for debtor Perry Moy's effective reorganization.

Miriam is left to argue that because Perry is obligated to pay the mortgage under the MSA the property is somehow necessary for his effective reorganization. This is so, she suggests, because if she loses the house, the "payments would be for naught." Her argument

ignores the fact that the MSA orders the sale of the property and, therefore, already envisions the need for Miriam to find another place to live. Indeed, the MSA includes a step up in monthly payments from $3,000 to $6,000 upon sale of the residence, presumably on the understanding that Miriam will incur increased expenses for rent or a new mortgage at her new location. The fact that the MSA envisions sale of the property with a subsequent step up in payments also evidences that lifting the stay or the loss of the property does not make compliance with the MSA impossible or otherwise conflict with its terms.

Ultimately, Miriam's argument ignores Perry's proposed plan. It is undisputed that neither Perry nor anyone else has been making the mortgage payments for the past five years. More importantly, Perry has never provided for payment of the mortgage to McHenry Savings Bank in any plan he has proposed. Neither Perry's proposed plan nor schedule J to his bankruptcy petition show that he will make current or past-due payments on the Crystal Springs Property mortgage, other than paying a pro-rata share to the Bank on a general unsecured deficiency claim after the property is sold. Miriam argues that Perry's plan should provide for payment of the mortgage because, in her view, that obligation constitutes a domestic support obligation which must be paid as a requirement for confirmation or discharge. But the determination whether property is necessary to an effective reorganization for purposes of Section 362(d)(2) is not based on what a creditor believes the Chapter 13 debtor "should" propose. Unlike Chapter 11, creditors cannot file competing plans in a Chapter 13 case. *Compare* 11 U.S.C. § 1321 *with* 11 U.S.C. § 1121(c). Indeed, rather than a reason to maintain the automatic stay, the fact that a debtor's proposed plan is not confirmable is generally a reason to *lift* the stay. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988) ("What this requires is not merely a showing that if there is conceivably to

be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*.").

Therefore, the Bank's motion to lift the stay will be granted.

II.     Section 1301(c)

McHenry Savings Bank also has met its burden of demonstrating that it is entitled to relief from the co-debtor stay. Pursuant to Section 1301(c)(2) relief from the co-debtor stay shall be granted with respect to a creditor "to the extent that ... the plan filed by the debtor proposes not to pay such claim." 11 U.S.C. § 1301(c)(2). Courts interpreting this language construe the provision to require that the claim be paid in full. *See, e.g., Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir. 1983) (relief from co-debtor stay available "when the debtor's plan proposes not to pay the creditor in full"); *Southeastern Bank v. Brown*, 266 B.R. 900, 908 (S.D. Ga. 2001) ("The [co-debtor] stay should be lifted to the extent the bankruptcy debtor does not pay the full debt through the repayment plan.").[4] The legislative history of Section 1301 further supports this interpretation: if "the debtor proposes not to pay a portion of the debt under his Chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim...." H.R. Rep. No. 95–595, at 122 (1977), U.S. Code Cong. & Admin. News 1978, at 5787, 6083.

None of the Chapter 13 plans proposed in this case have provided for payment in full of the McHenry Savings Bank claim. They have not proposed either to make current payments or to pay arrearages to cure the mortgage. Instead, the plans have proposed to surrender the Crystal

---

[4] In *Southeastern Bank v. Brown*, the issue was whether payment in full requires payment of post-petition interest in addition to the balance as of the petition date. The plan provided for payment of the creditor's claim in full but did not provide for post-petition interest. The district court held that Section 1301(c) requires payment of post-petition interest and therefore reversed the bankruptcy court and remanded for the co-debtor stay to be lifted. 266 B.R. at 909. Other courts have agreed that the plan must propose to pay the claim in full but have held that post-petition interest is not required. *See, e.g., Simon v. Myers*, 2008 WL 276546 (Bankr. S.D. Ill. Jan. 30, 2008). The court need not address this issue, however, because Perry's proposed plan does not even propose to pay the principal indebtedness to the Bank in full much less interest.

Springs Property. It is undisputed that the loan balance owing to McHenry Savings Bank is greater than the value of the Crystal Springs Property. While Perry's current plan acknowledges that the Bank may have a claim for a deficiency after the property is sold in foreclosure, the plan would treat such claim at best as a general unsecured claim to be paid an estimated 16%.

Again Miriam argues that Perry's obligation to pay the mortgage is a "domestic support obligation" under the marital settlement agreement, and that therefore his plan must provide for its payment in full. But again, under Section 1301(c)(2) the issue is not what plan a debtor *should* propose but instead what plan a debtor actually proposes. The statute expressly states that what is relevant is "the plan filed by the debtor." 11 U.S.C. § 1301(c)(2). This is because the co-debtor stay is designed primarily to protect the debtor and the debtor's estate, not the co-debtor. As explained by the Sixth Circuit Court of Appeals, the purpose of the co-debtor stay in a Chapter 13 case:

> is to enable the consumer-debtor to propose a repayment plan without undue pressure to give preference to a debt involving a co-signer. Congress believed that if a creditor could automatically reach the assets of a co-signer, who is generally a close friend or a relative of the debtor, then the co-signer would induce the debtor to give preference to that debt. Such a preference could easily frustrate the ability of the debtor to submit an acceptable plan.

*Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1053 (6th Cir. 1983). But if a debtor is voluntarily proposing to not pay such claims, such as here, it is unlikely that the debtor is being swayed by any such pressure or being induced to pay such debt. Indeed here the Debtor not only proposes a plan that does not pay the joint debt in full, but also has not objected to lifting the co-debtor stay.

The use of the words "to the extent" in Section 1301(c) indicates that the co-debtor stay should only be lifted to permit the creditor to pursue against the co-debtor the portion of the creditor's claim that is not provided for in the plan, and that the creditor must wait to be paid

through the debtor's plan for the remainder. *See, e.g., Southeastern Bank v. Brown*, 266 B.R. 900, 906 (S.D. Ga. 2001) ("Thus if the debtor proposes to pay only $70 of a $100 debt on which there is a cosigner, the creditor must wait to receive the $70 from the debtor under the plan but may move against the co-debtor for the remaining $30 and for any additional interest, fees, or costs for which the debtor is liable.") (quoting H.R. Rep. No. 95–595, at 122 (1977), U.S. Code Cong. & Admin. News 1978, at 5787, 6083); *In re Jacobsen*, 20 B.R. 648, 650 (9th Cir. B.A.P. 1982) (by proposing plan that would pay creditor less than full claim "the debtor has in effect stated the respective dimensions of his liability and that of the co-maker. Section 1301([c])(2) provides the creditor with freedom to pursue, to the latter extent, its claim against a co-debtor."); *In re Degroot*, No. 97-83327, 1997 WL 33475065 (Bankr. C.D. Ill. Dec. 29, 1997) ("To the extent that full payment is not proposed, and only to that extent, a creditor can obtain permission to pursue the codebtor without waiting for the termination of the case.") (quoting 8 Collier on Bankruptcy ¶ 1301.03[2][b])).

Here, Perry's proposed plan does propose to pay a portion of McHenry Savings Bank's claim:

> The estimated deficiency claim owed to McHenry Savings Bank is $183,588.67. The bank is to be paid 16% of its claim under the Plan, and the Trustee is to hold $489.57 of each monthly payment for the claim of McHenry Savings Bank and distributed once a deficiency claim is filed.

(Amended Plan, Dec. 2, 2013, ECF No. 158). But McHenry Savings Bank's motion does not seek to collect this portion of its claim through the foreclosure proceeding. By definition the "deficiency claim" to be paid through the plan is only whatever debt is left *after* the property is sold through the foreclosure proceeding. Nor does the Bank seek to enforce the deficiency claim against the co-debtor Miriam. Miriam has already received a Chapter 7 discharge, discharging her personal liability on the debt to McHenry Savings Bank. The Bank therefore does not, and

indeed, is unable to seek its deficiency claim against her individually.

Accordingly, the motion for relief from the co-debtor stay will be granted.

## **CONCLUSION**

For the foregoing reasons, both McHenry Savings Bank's motion for relief from the automatic stay under Section 362(d) and its motion for relief from the co-debtor stay under Section 1301(c) will be granted. The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered giving effect to the determinations reached herein.

DATE: August 25, 2014          ENTER:

_____

Thomas M. Lynch
United States Bankruptcy Judge